UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:06-cr-326-T-23TGW
8:10-cv-2928-T-23TGW

RAFAEL RONDON
_________________________________/

**O R D E R**

Rondon's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his one conviction for conspiring to commit armed bank robbery, his six convictions for armed bank robbery,[1] and his six convictions for carrying and using a firearm during the commission of the six bank robberies, for which he serves 1,794 months imprisonment. Rondon presents three grounds challenging the district court's subject matter jurisdiction, twelve grounds of ineffective assistance of trial counsel, and two grounds of ineffective assistance of appellate counsel.[2] Each ground lacks merit.

---

[1] Because Rondon wore a band-aid over a prominent mole on his left cheek during some of the bank robberies, he became known as the "Band-Aid Bandit." Rondon and his co-defendant, Emeregildo Roman, were tried jointly.

[2] This order also resolves a motion for leave to conduct discovery (Doc. 16), a motion for production of documents (Doc. 17), a motion for an evidentiary hearing (Doc. 18), and a motion to file a supplemental brief. (Doc. 20)

## I. PRIOR RESOLUTION

**Ground Fifteen**

Rondon contends that his trial counsel rendered ineffective assistance by not requesting an instruction on each firearm charge to require the jury to find that the firearm had the ability to discharge a projectile as defined in 18 U.S.C. § 921(a)(3). Rondon presented on direct appeal his challenge to the jury instruction as a claim of trial court error. (Doc. 11, attach. A, pp. 47–50) The United States Court of Appeals for the Eleventh Circuit decided the issue adversely to Rondon.[3] Repeating the claim under the guise of ineffective assistance of counsel adds no new fact justifying a different result. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). *See also Hobson v. United States*, 825 F.2d 364, 366 (11th Cir. 1987) (finding that a movant is not entitled to review in a Section 2255 motion of a claim raised and considered on the merits on direct appeal), *vacated on other grounds*, 492 U.S. 913 (1989); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (stating that a defendant may not "recast, under the guise of a collateral attack, questions fully considered by this court [on direct appeal]"). Ground fifteen warrants no relief.[4]

---

[3] The Eleventh Circuit concluded that, "[a]fter reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we conclude that there is no merit to . . . [this] argument[]." (Doc. 256 in 8:06-cr-326, p. 2, n.1)

[4] Rondon moves (Doc. 20) to file a supplemental brief asserting that *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), affords him relief. *Alleyne* holds that any fact that increases the mandatory minimum sentence is an element of the offense that a jury must find beyond a reasonable doubt. *Alleyne* is not retroactive. *Jeanty v. Warden, FCI-Miami*, 757 F.3d (continued...)

## II. MERITS

Rondon's remaining grounds are reviewed on the merits.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Rondon claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

---

[4](...continued)
1283, 1285 (11th Cir. 2014); *United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014). Consequently, Rondon cannot benefit under *Alleyne*.

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Rondon must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Rondon must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable

precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Rondon cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

**Ground Ten**

Rondon contends that his trial counsel rendered ineffective assistance by not moving for the magistrate judge to recuse himself after the judge stated at a pre-trial hearing that Rondon was "guilty as heck."[5] Rondon claims that

---

[5] Specifically, Rondon cites the following excerpt of the transcript to support his ground:

> Court: You mean he was going to the parents and asking for money during the time he was robbing these banks?
>
> [Counsel]: Judge, I think the Court's question is impossible to answer. Mr. Rondon is not saying he robbed any banks.

(continued...)

[5](...continued)

Court: Well, but it's sort of — it's called by your comment that they were helping him financially at the time he was getting a whole lot of money robbing banks.

[Counsel]: Judge, I'm not conceding that he was robbing banks.

. . . .

Court: That's sort of remarkable. I find it ironic that he was asking his parents for money at the time he was robbing banks. So you don't have to comment on it; I'm just making that comment myself.

[Counsel]: Well, number one, Judge, to try to respond to that, the Court —

Court: You don't have to.

[Counsel]: Well, what I'm saying is, the Court is basically stating that you have found him guilty of what he's accused of.

Court: From what I - - from everything I've heard, he's guilty as heck. There isn't any question about it. I haven't heard anything suggesting otherwise, so — and I don't hear anything from the defendant.

Now, this isn't the time for trial. But the evidence against him is very strong. Since I have the background of hearing the evidence and seeing the evidence and affidavits, yeah, it is. There isn't any question about it.

(Doc. 181 in 8:06-cr-326, pp. 10–11)

The day after the hearing the Saint Petersburg Times newspaper included a brief article quoting the magistrate judge. The article states in its entirety:

Guilty until proven innocent?

A U.S. magistrate judge denied a request for bail Wednesday from the man authorities believe is the Band-Aid Bandit, saying he is "guilty as heck." Rafael Rondon's lawyer, Daniel Hernandez, told U.S. Magistrate Thomas Wilson his client deserved bail because he had no criminal record before his arrest. Wilson responded by saying the evidence against Rondon was overwhelming. "From everything I've heard, he's guilty as heck," Wilson said. "I haven't heard anything suggesting

(continued...)

counsel's failure to move for recusal based upon the magistrate judge's allegedly biased and prejudicial remark resulted in a denial of due process.

A judge's remarks or "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Only personal bias, not judicial bias, is sufficient to justify recusal of a judge. *Jaffree v. Wallace*, 837 F.2d 1461, 1465 (11th Cir. 1988). Such bias must "'stem from personal, extrajudicial sources' unless 'pervasive bias and prejudice is shown by otherwise judicial conduct.'" *First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 825 F.2d 1475, 1487 (11th Cir. 1987) (citation omitted), *cert. denied*, 484 U.S. 1060 (1988). *See also Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality motion.").

The magistrate judge's statement and the resulting rejection of Rondon's motion for reconsideration of bail were based on (1) the testimony the magistrate judge heard at Rondon's preliminary hearing, (2) the search warrants, and (3) the complaints in the criminal case. (Doc. 181 in 8:06-cr-326, pp. 7–8) The adverse

---

[5](...continued)
otherwise." Rondon and co-defendant Emeregildo Roman are expected to go to trial in April on bank robbery and gun charges.

(Doc. 2, attach. 3, p. 10)

ruling is insufficient to show judicial bias. 28 U.S.C. § 455.[6] Rondon neither presents evidence showing that the magistrate judge's opinion about the case was formed based upon extrajudicial sources nor shows actual bias by the magistrate judge. *See Hamm v. Members of the Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1983) ("The general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources . . . . Neither a trial judge's comments on the lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias."). Rondon shows neither deficient performance nor prejudice resulting from trial counsel's failure to move for recusal. *Strickland*, 466 U.S. at 691–92. Ground ten warrants no relief.

**Ground Eleven**

Rondon contends that his appellate counsel rendered ineffective assistance by not challenging on direct appeal the magistrate judge's failure to *sua sponte* recuse himself. The *Strickland* standard of review applies to a claim of ineffective assistance of appellate counsel. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). To establish this claim, Rondon must

---

[6] The criteria for recusal include:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b)(1) He shall also disqualify himself ... [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

28 U.S.C. § 455(a), (b)(1).

show that appellate counsel performed deficiently and that the deficient performance resulted in prejudice. To demonstrate deficient performance, Rondon must show that appellate counsel's failure to discover a non-frivolous issue and to brief the merits of that issue fell outside the range of professionally acceptable performance. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To demonstrate prejudice, Rondon must show a reasonable probability exists that, but for appellate counsel's unreasonable failure to brief the merits of a non-frivolous issue, he would have prevailed on appeal. *Smith*, 528 U.S. at 285–86.

As discussed in ground ten, *supra*, Rondon fails to establish that the magistrate judge harbored actual bias or prejudice that required recusal. Rondon shows neither that appellate counsel unreasonably elected not to raise this issue on appeal nor that he would have prevailed on appeal if appellate counsel had raised the issue. 528 U.S. at 285. Because Rondon establishes neither deficient performance by appellate counsel nor resulting prejudice, he cannot prevail on this ground of ineffective assistance of counsel.

**Grounds One and Two**

In ground one Rondon contends that the district court lacked subject matter jurisdiction to try, convict, and sentence him because the court record includes no docket entry showing that twelve or more qualified grand jurors examined and approved the second superceding indictment. Rondon claims that this error

violates both Rule 6, Federal Rules of Criminal Procedure,[7] and the Fifth Amendment. In ground two Rondon contends that his trial counsel rendered ineffective assistance by (1) not investigating the validity of the second superseding indictment and (2) not moving to dismiss the case for lack of subject matter jurisdiction.

Pending motions

To support grounds one and two, Rondon moves both for leave to conduct discovery and for production of grand jury documents. (Docs. 16 and 17) Specifically, Rondon seeks certified copies of (1) the transcript of the grand jury proceeding, (2) the grand jury log showing that the grand jury convened "on or about February 7, 2007, [and] return[ed] the alleged second [s]uperseding [i]ndictment," and (3) the "concurrence sheet" showing that at least twelve or more grand jurors "certified, verified, and concurred" in returning the second superseding indictment." (Doc. 16, p. 4; Doc. 17, p. 2) As *United States v. Williams*, 180 Fed. App'x 108, 109 (11th Cir. 2006),[8] explains, the motions lack merit:

> The general rule is that grand jury proceedings are to be kept secret. *See United States v. Aisenberg*, 358 F.3d 1327, 1346 (11th Cir. 2004). Limited exception to the general rule may apply when the grand jury matter is sought "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). A party seeking grand jury transcripts bears the

[7] Rule 6(f) states that a grand jury may indict only if at least twelve jurors concur.

[8] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

> burden of showing that (1) the material sought is needed to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure outweighs the need for continued secrecy; and (3) the request is structured to embrace only necessary material. *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S. Ct. 1667, 1674, 60 L. Ed. 2d 156 (1979); *United Kingdom v. United States*, 238 F.3d 1312, 1320–21 (11th Cir. 2001) (quoting the *Douglas Oil Co.* standard). "These same demanding standards apply even after the grand jury has concluded its operations." *Aisenberg*, 358 F.3d at 1348. The defendant seeking grand jury material must show a "particularized need;" generalized allegations will not suffice. *United States v. Burke*, 856 F.2d 1492, 1496 (11th Cir. 1988).

Rondon fails to show a particularized need for disclosure of the grand jury documents. His speculative allegation of an irregularity in the grand jury proceedings is insufficient to warrant disclosure of the documents. *See United States v. Valencia-Trujillo*, 462 Fed. App'x 894, 898 (11th Cir. 2012) ("General or unsubstantiated allegations do not satisfy the 'particularized need' requirement."). *See also United States v. Rockwell Int'l Corp.*, 173 F.3d 757, 760 (10th Cir. 1999) ("No grand jury testimony is to be released for the purpose of a fishing expedition or to satisfy an unsupported hope of revelation of useful information . . . ."). Accordingly, Rondon's motion for leave to conduct discovery and his motion for production of grand jury documents (Docs. 16 and 17) lack merit.

Merits of grounds one and two

A district court has "original jurisdiction . . . of all offenses against the laws of the United States." 18 U.S.C. § 3231. Accordingly, the district court had subject matter jurisdiction over the charges against Rondon because the indictment charges him with violating the laws of the United States. The record shows that

the grand jury foreperson endorsed the second superseding indictment as a true bill, which indicates that twelve grand jurors voted to indict Rondon.[9] "An indictment regular on its face . . . carries with it a strong presumption of verity." *Ward v. United States*, 694 F.2d 654, 658 (11th Cir. 1982) (citation omitted). Because the foreperson's signature is an attestation to the act of the grand jury, *United States v. Cox*, 342 F.2d 167, 171–72 (5th Cir.) (*en banc*), *cert. denied sub nom. Cox v. Hauberg*, 381 U.S. 935, 85 S. Ct. 1767, 14 L. Ed. 2d 700 (1965), and because he provides no credible evidence proving otherwise, Rondon fails to overcome the presumption that the grand jury properly returned the second superseding indictment. Rondon's failure to plead facts demonstrating an irregularity in the charging process precludes relief. *See Ward*, 694 F.2d at 658–59 (rejecting movant's "unsubstantiated claim that [his] indictment was not submitted to the grand jury," because movant presented "no credible evidence" showing an irregularity). *See also United States v. Gower*, 447 F.2d 187, 189–90 (5th Cir. 1971)[10]

---

[9] *See United States v. Demarey*, 81 F.3d 161 at *2 (6th Cir. 1996) ("The superseding indictment is signed by the grand jury foreperson and indicates that it is a true bill; that is, a quorum of grand jurors agreed to indict.") (unpublished); *United States v. Michael*, 180 F.2d 55, 56 (3d Cir. 1950) ("The finding of an indictment is the function of the grand jury. When an indictment has been submitted to the grand jury by the government attorney it becomes the duty of that body to find it to be a true bill of indictment and so return it to the district court, if at least twelve of the grand jurors concur in regarding the evidence presented by the government as making out a prima facie case of the offense charged. If the requisite number of grand jurors decline to find the indictment to be a true bill it is to be returned as ignored. When the grand jury has found an indictment to be a true bill and has completed its action thereon by returning the indictment, duly endorsed as a true bill by its foreman, to the district court in open session, its function has been fulfilled.").

[10] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

(rejecting movant's claim that he was deprived of his Fifth Amendment right to an "independently acting grand jury" because the grand jury allegedly "rubber stamp[ed]" a proposed indictment).

Finally, even if Rondon is correct that the second superseding indictment is defective because twelve grand jurors did not concur to indict, that deficiency is not fatal to the district court's subject matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630 (2002) (holding that "defects in an indictment do not deprive a court of its power to adjudicate a case"). Accordingly, ground one of the motion to vacate warrants no relief. Because he fails to establish that the district court lacked subject matter jurisdiction over his case, Rondon cannot show that his trial counsel rendered ineffective assistance by not moving to dismiss the case for lack of subject matter jurisdiction. Rondon's failure to satisfy *Strickland's* requirements precludes relief on ground two. *Strickland*, 466 U.S. at 691–92.

**Ground Three**

Rondon alleges that the district court lacked subject matter jurisdiction to hear his case because the prosecutor did not charge the conspiracy alleged in count one of the second superceding indictment within the five-year limitation prescribed by 18 U.S.C. § 3282. Rondon procedurally defaulted this ground by not raising it on direct appeal. When a movant presents in a Section 2255 motion a ground that could and should have been raised at sentencing or on direct appeal, review by the district court is barred absent a showing of either cause and prejudice or actual

innocence. *Bousley v. United States*, 523 U.S. 614 (1998); *United States v. Frady*, 456 U.S. 152 (1982). To show cause for not raising the ground on direct appeal, Rondon must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim. *Lynn v. United States*, 365 F.3d 1225, 1235 n.20 (2004). To show prejudice, Rondon must demonstrate that "errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations omitted).

To establish actual innocence, Rondon must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623–24 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). *Schlup v. Delo*, 513 U.S. 298, 324 (1995), observes "that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires [a movant] to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." If a movant demonstrates "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence," the movant establishes a "gateway"

claim of innocence allowing review of the merits of an otherwise barred constitutional claim. *Melson v. Allen*, 548 F.3d 993, 1002 (11th Cir. 2008).

Rondon fails to allege a valid cause to excuse his default because he establishes no external impediment that prevented him from raising this ground on direct appeal. *Lynn*, 365 F.3d at 1235, n.20. Rondon likewise fails to establish a denial of fundamental fairness at trial. *Wright*, 169 F.3d at 706. Rondon presents no new reliable evidence countering the overwhelming and largely unrebutted evidence of his factual guilt and (miraculously) demonstrating his factual innocence. *Schlup*, 513 U.S. at 324. Because he cannot establish an actual innocence claim, Rondon cannot avail himself of this "gateway" to obtain federal review of his procedurally defaulted ground. Consequently, ground three is procedurally barred from federal review.

**Ground Four**

Count one of the second superseding indictment charges a conspiracy "[f]rom a date unknown . . ., but commencing prior to on or about December 29, 2000, and continuing thereafter, up to and including on or about July 13, 2006," in violation of 18 U.S.C. § 371. (Doc. 63 in 8:06-cr-326) Rondon contends that his trial counsel rendered ineffective assistance by not moving to dismiss count one based on the five-year limitation prescribed in 18 U.S.C. § 3282.[11]

---

[11] Section 3282(a) provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed."

"In a conspiracy prosecution brought under § 371 the government in order to avoid the bar of the limitation period of § 3282 must show the existence of the conspiracy within the five years prior to the return of the indictment, and must allege and prove the commission of at least one overt act by one of the conspirators within that period in furtherance of the conspiratorial agreement." *United States v. Davis*, 533 F.2d 921, 926 (5th Cir. 1976). The second superseding indictment alleges conduct that occurred "on or about July 13, 2006." Accordingly, the limitation did not expire until July 13, 2011, well after the second superseding indictment was returned in 2007. Trial counsel had no basis to move to dismiss count one based on expiration of the limitation. Rondon establishes neither deficient performance nor resulting prejudice. *Strickland*, 466 U.S. at 691–92. Ground four warrants no relief.

**Ground Eight**

Rondon contends that his trial counsel rendered ineffective assistance by not moving to dismiss the conspiracy charge as vague and defective because the indictment cites no starting date for the conspiracy. Rondon also argues that the second superseding indictment improperly charges an open-ended conspiracy, excluding a necessary element of the offense.

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future

prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "[A]n indictment for conspiracy need not be as specific as an indictment for a substantive count." *United States v. Harrell*, 737 F.2d 971, 975 (11th Cir. 1984). Further, "[a]n indictment is not insufficient merely because some necessary allegation was stated with less specificity than might have been used. The sufficiency of an indictment is determined by practical, not technical, considerations." *United States v. Sutherland*, 656 F.2d 1181, 1197 (5th Cir. 1981).

Contrary to Rondon's contention, the indictment sufficiently apprises Rondon of the conspiracy charge and includes the manner and means of the conspiracy and the specific overt acts committed to effect the conspiracy. *Hamling*, 418 U.S. at 117. Although the timeframe alleged in the second superseding indictment, "[f]rom a date unknown to the Grand Jury, but commencing prior to on or about December 29, 2000, and continuing thereafter, up to and including on or about July 13, 2006," arguably includes an open-ended start date, the indictment is not legally deficient. *See United States v. Pease*, 240 F.3d 938, 942–43 (11th Cir. 2001) (upholding an indictment that did not allege a specific start date for a drug conspiracy and rejecting defendant's argument that such an indictment fails to charge an offense because it sufficiently informed the defendant of the charge to which he pleaded guilty and would allow him to raise a double jeopardy defense in a future prosecution). *See also United States v. Forrester*, 616 F.3d 929, 940–41 (9th Cir. 2010) (upholding an indictment that alleged an offense beginning on a "date

unknown" because "an indictment that specifies an end date is sufficient to apprise defendants of the charges and enable them to prepare a defense"); *United States v. Rawlins*, 606 F.3d 73, 79 (3d Cir. 2010) (finding sufficient an indictment alleging a conspiracy beginning at "a time unknown").

Because Rondon fails to establish a defect in the indictment, trial counsel had no reason to object to the conspiracy charge. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim). Ground eight warrants no federal habeas relief because *Strickland's* requirements remain unsatisfied. *Strickland*, 466 U.S. at 691–92.

**Ground Five**

Rondon claims that the six armed bank robbery charges are "multiplicitous" because the conspiracy in count one incorporates those charges. Rondon contends that his trial counsel rendered ineffective assistance by not moving to dismiss the six armed bank robbery charges on that basis.

"An indictment is multiplicitous if it charges a single offense in more than one count." *United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008). Counts two, four, six, eight, ten, and twelve of the second superseding indictment each charge an armed bank robbery under 18 U.S.C. §§ 2113(a), (d), and (2). (Doc. 63 in 8:06-cr-326) Although each count charges a violation of the same federal statute, no two counts charge the same robbery of the same bank on the same day. Consequently, counts two, four, six, eight, ten, and twelve are not

"multiplicitous." *See United States v. Vargas*, ___ Fed. App'x ___, 2014 WL 1492302 (11th Cir. 2014) ("We have held . . . that charges are not multiplicitous where they differ by even a single element or alleged fact.") (citing *United States v. Costa*, 947 F.2d 919, 926 (11th Cir. 1991)).

To the extent that Rondon argues that the six armed bank robbery charges are "multiplicitous" to the conspiracy charge, he cannot obtain relief. The government can charge a defendant with both a substantive offense and a conspiracy to commit that offense. *Iannelli v. United States*, 420 U.S. 770, 777–78 (1975). *See also United States v. Ternus*, 598 F.3d 1251, 1254–55 (11th Cir. 2010) (concluding that "a conspiracy and the related substantive offense which is the object of the conspiracy, are separate and distinct offenses"). Accordingly, trial counsel had no basis to move to dismiss the six armed bank robbery charges as Rondon suggests. Rondon's failure to establish either deficient performance or resulting prejudice precludes relief on ground five because the requirements of *Strickland* remain unsatisfied.[12] *Strickland*, 466 U.S. at 691–92.

**Ground Seven**

Rondon contends that his appellate counsel rendered ineffective assistance by not arguing on direct appeal that Rondon was tried, convicted, and sentenced

---

[12] In footnote 7 of his memorandum, Rondon claims that, "since counts 2, 4, 6, 8, 10 and 12 are multiplicitous, then counts 3, 5, 7, 9, 11, and 13 [each charging Rondon with carrying and using a firearm during the commission of a bank robbery] also must be dismissed as a matter of fact and law . . . ." (Doc. 2, attach. 1, p. 15) None of the firearm counts charge Rondon with carrying and using a firearm during the same bank robbery on the same day. Consequently, Rondon states no basis for dismissal.

on "multiplicitous" counts for the six armed bank robberies. Because each of the six armed bank robbery charges is a discrete offense, Rondon establishes neither that appellate counsel unreasonably elected not to raise this issue on appeal nor that he would have prevailed on appeal if appellate counsel had raised the issue. *Smith*, 528 U.S. at 285–86. *See also Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Rondon's failure to satisfy *Strickland's* requirements precludes relief on ground seven.

**Ground Six**

Rondon contends that his trial counsel rendered ineffective assistance by not arguing that Rondon's sentences for the six armed bank robbery convictions resulted in multiple punishments for the same offense. Rondon alleges that "these counts charged the exact same offense, under the same federal statute ([18 U.S.C.] § 2113(a) and (d)), and in the same indictment." (Doc. 2, attach. 1, p. 22) Rondon claims that "trial counsel should have challenged [Rondon]'s sentences in an effort to assure that the distrct court does not exceed its legislative authorization by imposing multiple punishments for the same offenses." (Doc. 2, attach. 1, p. 23)

The Double Jeopardy Clause of the Fifth Amendment "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498

(1984). Each armed bank robbery conviction results from a discrete criminal act. Rondon did not receive more than one sentence for each conviction. Accordingly, trial counsel had no basis to raise a double jeopardy challenge to the sentences as Rondon alleges. Rondon's failure to establish either deficient performance or resulting prejudice precludes relief on this ground of ineffective assistance of counsel because the requirements of *Strickland* remain unsatisfied. *Strickland*, 466 U.S. at 691–92.

**Ground Nine**

Rondon contends that his trial counsel rendered ineffective assistance by (1) not notifying Rondon that he had a right to testify and (2) not permitting Rondon to testify. Rondon claims that, absent counsel's misadvice, he would have testified at trial and rebutted the testimony of the government's witnesses.

A criminal defendant possesses a fundamental constitutional right to testify at trial. *Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992). *See also Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999) (holding that ineffective assistance occurs when (1) counsel refuses to honor a defendant's decision to testify or (2) counsel fails to inform a defendant that he has a right to testify and that the final decision whether to testify is the defendant's

alone). "Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." *Teague*, 953 F.2d at 1534. To prevail on an ineffective assistance of counsel claim alleging that counsel prevented a movant from testifying, the movant must produce more than a bare, unsubstantiated allegation to satisfy *Strickland's* requirements. *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) ("[I]n a subsequent collateral attack on the conviction [alleging ineffective assistance for counseling the defendant not to testify], the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.").

After the government rested and outside the jury's presence, the district court apprised Rondon both that he had a right to testify and that the ultimate decision to testify rested solely with him:

> Court: I am sure that . . . you heard yesterday that the United States rested or concluded its presentation of evidence against . . . you in its case-in-chief. This morning I will begin by recognizing [trial counsel] to offer evidence on behalf of Mr. Rondon . . . .
>
> I summon you up here this morning because the completion of the presentation by the United States inevitably gives rise to the question of whether a defendant will himself testify in his own defense. I am not involved in the decision whether a witness will — a defendant will testify in his own

defense. That's not my purpose in discussing with you the matter.

My purpose is to ensure that . . . you understand[] the nature of your rights with respect to your possible testimony. Stated succinctly, it is the right of a defendant in a criminal prosecution to testify or not to testify as that witness determines. This right is personal to the defendant and the right to testify or not testify can be asserted or waived only by the defendant himself.

In other words, for example, Mr. Rondon may choose to testify or not testify and only he can make that decision, not his attorney . . . in this case, not, of course, the United States, not the Court or no one else. Only the defendant can make that decision, which is what I mean when I say that right is personal to the defendant.

Of course, you may consult — and I suggest you do so, if you have not already — with your counsel before making the decision to testify or not testify. As is known to the Court, . . . [trial counsel] . . . [is] experienced at defending cases in the United States Court and ha[s] insight into the question whether a particular defendant should testify in a particular case. Often, of course, defendants will consult with friends, confidants and family members, or others of their choosing in deciding whether to testify. Ultimately, however, I say again, the decision is that of the defendant.

Now, if a defendant elects to take the witness stand, that provides the witness a singular opportunity to directly explain to the jury, in response to presumably friendly questions from his own counsel, the facts in the case as that defendant sees them. It provides to the jurors an opportunity to directly appraise the credibility and weight of the defendant's testimony and of course the defendant himself.

On the other hand, while offering that possibly favorable opportunity, when a defendant takes the witness stand, he waives his right not to testify and

then becomes subject to a probably hostile cross examination from the United States. That cross examination is likely pointed and wide ranging and undoubtedly hostile in intent.

On the other hand, if a defendant elects not to testify, I will instruct the jurors that they can draw no inference adverse to the defendant based upon the defendant's election not to testify.

Mr. Rondon, have you understood what I have said so far?

[Rondon]: Yes, Your Honor.

. . . .

Court: Mr. Rondon, I am not asking what you have said, but have you discussed your prospective testimony with your counsel and decided whether or not you will, in fact, testify?

[Rondon]: I have discussed that with him. I haven't decided yet, Your Honor.

. . . .

Court: All right. Well, my purpose in speaking to you this morning directly was to ensure, as I said earlier, that you understand that the decision whether to testify is yours and no one else's, that the time is near to make that decision. And for all practical purposes you should assume that when you make that decision you will not have an opportunity to change your mind, which is to say if you elect not to testify and the defense rests, the matter is largely concluded. If you assume the witness stand and while on the witness stand change your mind, I am afraid you're committed at that point to continue your testimony.

So take an opportunity to consult . . . with your counsel to arrive at this decision, but remember at all times that ultimately the decision is yours and no one else's, of course, logically so because it is

> you ultimately that bear[s] the consequences of the decision.
>
> Any questions, Mr. Rondon?
>
> [Rondon]: No, Your Honor.

(Doc. 217 in 8:06-cr-326, pp. 6–10)

The colloquy clearly shows that Rondon knew he had a right to testify and that the decision whether to testify was his alone. Rondon sat passively when trial counsel rested the defense case without calling Rondon to testify. Rondon did not alert the court that he wanted to testify. His allegation that he "expressed to counsel his desire to testify in his own defense but counsel gave no response" (Doc. 2, attach. 1, p. 33) is insufficient to establish that counsel denied Rondon his right to testify. Rondon's failure to satisfy *Strickland's* requirements precludes relief on ground nine. *Strickland*, 466 U.S. at 691–92.

**Ground Sixteen**

During *voir dire* each venireman was asked about exposure to pre-trial publicity of the case. Fifteen of the sixteen seated jurors admitted some minimal familiarity with either the case or the term "Band-Aid Bandit."[13] (Doc. 224 in 8:06-cr-326, pp. 61–63, 83–84, 89, 91–92, 96, 101–02, 104–05, 125–26, 135, 149, 164–65, 191–92) The jurors who admitted to hearing or reading about the case were not asked to disclose the specific media source from which they had learned

---

[13] Juror Goodfield stated that he had not heard a news account or report about the case. (Doc. 224 in 8:06-cr-326, pp. 57–58)

about the case.[14] Rondon contends that his trial counsel rendered ineffective

---

[14] Rondon specifically points to counsel's failure to inquire about juror Cutter's knowledge of the St. Petersburg Times article that included the quote from the magistrate judge that Rondon was "guilty as heck." Cutter acknowledged during *voir dire* that he had heard about the case through the newspaper, television, and the radio. (Doc. 224 in 8:06-cr-326, pp. 61–62) Cutter specifically stated that he had last read some coverage about the case "[w]hen [Rondon] was picked up at the 49th Street robbery and I think he had just went to 110th Avenue where he robbed that bank across from Vick's . . . ." When asked when he had last heard a report about the case, Cutter replied "probably a year." (Doc. 224 in 8:06-cr-326, p. 63) Following Cutter's comment, the venire was advised of the purpose of inquiring about media exposure to the case:

> Mr. Cutter, I want to follow up just a little bit on that because — I don't want to go into or try to discover the contents of any report that you may have read because that's not the essential issue. The essential issue here that we would explore this morning is not whether any member of this jury panel is attentive to the news. And it's not the question of whether some report of this matter or some report that is attributed to this matter appears in the news. That's not the question.
>
> The question is whether someone in effect who is being considered as a juror comes to jury service with an open mind, not captured in a sense by the force of some publicity, if there has been any. And whether that person will comply with the fundamental obligations of a juror.
>
> For the benefit not only of you but of everyone sitting here, let me comment a moment about that. What is a juror supposed to do? A juror is not supposed to necessarily come here with no knowledge of what's going on in the community, with no knowledge of news that's being reported from near and far. A juror has the duty to come to court ready to follow the law and be guided by the evidence. The evidence in a case comes from witnesses who come in and swear an oath to tell the truth, assume the witness stand, which is what that is over there to my right, and testify in response to questions from counsel. That's the primary source of evidence. And of course as you probably all know, counsel will introduce matters, tangible objects, often documents, sometimes other sorts of material into evidence during the course of the trial. And it is that evidence of what happened in any particular case that the jurors should evaluate in coming to a decision on the facts. Obviously, the reason that we present that evidence is so that the matters that a juror considers in arriving at his or her verdict in a matter is information that is subject to examination and testing in effect by questions and answers by the counsel in their representative status for the parties and by the court. So that all the jurors see and hear the same information. In other words, nobody's got special knowledge about the matter that they've

(continued...)

assistance by not asking the sixteen seated jurors whether (1) they had read the specific newspaper article containing the quote from the magistrate judge and (2) they could remain fair and impartial if they had read the article.

"The constitutional standard of fairness requires that the criminally accused have a panel of impartial, indifferent jurors." *Murphy v. Florida*, 421 U.S. 794, 799 (1975). *Voir dire* "plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). "The purpose of voir dire is to ascertain whether potential jurors can render a verdict solely on the basis of evidence presented and the charge of the trial court." *Wilcox v. Ford*, 813 F.2d 1140, 1150 (11th Cir. 1987). *See also J.E.B. v. Ala. ex rel. T.B.*, 511 U.S. 127, 143–44 (1994) ("*Voir dire* provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently.").

Effective assistance of counsel is required during *voir dire*. *Brown v. Jones*, 255 F.3d 1273, 1278–79 (11th Cir. 2001). However, "[n]o hard-and-fast formula

---

[14](...continued)

> acquired through some way that none of us know about. In other words, so that the verdict will be based rationally and fairly on things that are said and done in open court and subject to examination and cross examination. That is what the lawyers call due process, and that's what you and I will call common sense and fairness.
>
> That is not intended as any criticism of those who report the news, have the difficult task of reporting the news. It is to say that a different objective is being pursued in the courtroom in a different manner. It is that a verdict be reached as a result of a process that's open and transparent for all the participants.

(Doc. 224 in 8:06-cr-326, pp. 63–65)

dictates the necessary depth or breadth of *voir dire*." *Skilling v. United States*, 561 U.S. 358, 362 (2010). Because empaneled jurors are presumed impartial, *see Smith v. Phillips*, 455 U.S. 209, 215 (1982), to satisfy *Strickland's* prejudice prong Rondon must show that the juror selection process produced a juror that was actually biased against him. *Hughes v United States*, 258 F.3d 453, 458 (6th Cir. 2001). A defendant's disagreement with counsel's tactics or strategy during *voir dire* supports no claim of ineffective assistance of counsel. *See Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (stating that a defendant's Sixth Amendment right to a fair and impartial jury was not violated absent a showing that a jury member hearing the case was actually biased against him).

Rondon does not argue that (1) any of the jurors were actually biased against him or (2) specific questioning about the brief article published two months before jury selection would have caused the exclusion of a member of the venire or a juror. The record shows that *voir dire* resulted in the selection of jurors largely unaware of the publicity about the case other than some familiarity with the term "Band-Aid Bandit." Rondon offers no evidence demonstrating that a juror harbored actual bias against him. As a result, Rondon shows no prejudice. *See Irvin v. Dowd*, 366 U.S. 717, 727 (1961) (stating that, to find actual prejudice, a defendant must establish (1) that a juror who decided the case had predetermined the defendant's guilt before hearing the evidence adduced at trial and (2) that the juror could not have laid aside that opinion and "render[ed] a verdict based on the

evidence presented in court."); *Murphy*, 421 U.S. at 800–01 (finding that the defendant failed to show that the jury selection process permitted an "inference of actual prejudice" despite some jurors expressing a vague recollection of the alleged crime). Rondon's failure to satisfy *Strickland* precludes relief.[15]

---

[15] The Eleventh Circuit's order on direct appeal rejecting Rondon's challenge to the denial of his motion for change of venue further supports the conclusion that the brief article containing the magistrate judge's statement did not taint the venire (Doc. 256 in 8:06-cr-326, pp. 2–4) (footnotes omitted):

> Mr. Rondon argue[s] that the motion to change venue should have been granted due to the prejudicial effect of the pretrial publicity. In particular, [he] points to the magistrate judge's comment at a bail reconsideration hearing that Mr. Rondon was "guilty as heck," which was reported in a local newspaper. [He] also rel[ies] on (1) the fact that 86% of the prospective jurors questioned had heard about the charges or persons prior to showing up for jury duty; (2) observations by the district court that the case had garnered unusual attention; and (3) the purported thousands of online references to the Band-Aid Bandit.
>
> The district court did not abuse its discretion when it denied the motion to change venue. . . . Mr Rondon h[as] not explained how a six-sentence article appearing on an inferior page of a local newspaper two months before trial amounted to "inflammatory, prejudicial pretrial publicity that so pervade[d] or saturate[d] the community as to render virtually impossible a fair trial by an impartial jury drawn from that community." *Coleman v. Kemp*, 778 F.2d 1487, 1490 (11th Cir. 1985) (quoting *Mayola v. Alabama*, 623 F.2d 992, 997 (5th Cir. 1980)). Although many members of the venire had heard the term "Band-Aid Bandit," few knew anything more than that nickname. No one admitted to seeing the thousands of articles [Rondon] say[s] exist online.
>
> Only one juror had any particularized knowledge of the names or events described in the indictment: he knew the location of two of the banks that had been robbed. However, the juror had not seen any news reports for the past year, a time period which encompassed the newspaper article on the magistrate judge's comment. In addition, that juror, like all of the other jurors who were familiar with the news reports, indicated that he would have no problem being fair and impartial. The fact that some jurors vaguely recalled the robberies does not necessarily indicate that they were predisposed against . . . Mr. Rondon. *See Murphy v. Florida*, 421 U.S. 794, 800 &

(continued...)

**Ground Twelve**

Rondon contends that his trial counsel rendered ineffective assistance by not properly investigating his case. Specifically, Rondon claims that if counsel had conducted a "factual and legal" investigation, counsel would have discovered that other individuals with the nickname "Band-Aid Bandit" had committed bank robberies. Rondon argues that trial counsel's failure to investigate these other individuals prevented him from putting forth his only "potential defense." Rondon claims that prejudice resulted because the jury "never had . . . the opportunity to hear about those other alleged Band-Aid bandits."

Rondon presents as support for his argument copies of three internet articles about individuals nicknamed the "Band-Aid Bandit" who committed bank robberies in Texas and California. (Doc. 2, attach. 3, Exs. C, D, E) Rondon fails to acknowledge that the crimes committed by these other individuals occurred *after* his trial. Trial counsel could not have used these other "bandits" to argue a misidentification defense because their crimes had not yet occurred. Because Rondon fails to establish deficient performance by trial counsel or resulting

[15](...continued)

n.4, 95 S. Ct. 2031, 2036 & n.4 (1975) (finding no prejudice even though some jurors "had a vague recollection of the robbery with which petitioner was charged" and every juror "had some knowledge of petitioner's past crimes"). "[T]he Supreme Court has ruled that we cannot presume prejudice in the absence of a 'trial atmosphere . . . utterly corrupted by press coverage.'" *Campa*, 459 F.3d at 1144 (quoting *Dobbert v. Florida*, 432 U.S. 282, 303, 97 S. Ct. 2290, 2303 (1977)).

prejudice, he cannot prevail on this ground of ineffective assistance of counsel. *Strickland,* 466 U.S. at 697.

**Ground Thirteen**

Rondon admits that trial counsel conveyed to him a plea offer from the government of eighty years imprisonment in exchange for Rondon both pleading guilty and agreeing to cooperate with the government. Rondon states that he immediately rejected this offer because (1) the offer "was not fair and equitable," and (2) he refused to cooperate with the government. (Doc. 2, Ex. 1, p. 49) Rondon contends that his trial counsel had a duty to seek a more favorable plea bargain and that trial counsel's failure to do so adversely affected his sentencing guidelines calculation because he lost the benefit of both a two-level reduction in his offense level for accepting responsibility and a one-level reduction for timely notifying the government of his intention to plead guilty. *See* U.S.S.G. § 3E1.1(a), (b).

The decision whether to offer a plea agreement and the terms to include in that agreement are both matters of prosecutorial discretion. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."). "The successful negotiation of a plea agreement involves factors beyond the control of counsel . . . including the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir.

2000). Rondon has not alleged that he instructed trial counsel to negotiate a plea offer on his behalf and he presents no evidence showing that the government would have offered a second more favorable plea offer as a result of any further negotiation by trial counsel. Rondon premises his ineffective assistance of counsel claim on the assumption that, by pleading guilty, he would have received a three-level reduction under the Sentencing Guidelines for acceptance of responsibility. This argument is speculative and undermined by his continued claim of innocence.[16] By his own admission, Rondon was not willing to cooperate with the government and has not shown that he was willing to plead guilty to, and accept responsibility for, the charges against him. Rondon fails to demonstrate prejudice because he can only speculate that the government would have been willing to engage in further negotiations; speculation is insufficient to entitle Rondon to federal habeas relief. *See Hill v. Lockhart*, 474 U.S. 52 (1985) (holding that conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Rondon's failure to meet *Strickland's* requirements precludes relief on this ground of ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

---

[16] Rondon objected to paragraphs 27 through 53 of the presentence report, which describe the offense conduct and stated that he "denies all charges."

**Ground Fourteen**

Rondon contends that the district court lacked jurisdiction to impose a consecutive sentence for each of his six firearm convictions. Specifically, Rondon argues that under the "except" clause of 18 U.S.C. § 924(c)(1)(A)[17] the longer minimum mandatory sentence for each of the armed bank robbery convictions precludes a consecutive minimum mandatory sentence for each of the firearm convictions.

Controlling Supreme Court precedent forecloses Rondon's argument. *See Deal v. United States*, 508 U.S. 129 (1993) (requiring a sentencing court to impose a sentence under 18 U.S.C. § 924 (c)(1)(A) for the first conviction under Section 924(c) in an indictment and then impose an additional twenty-five year consecutive sentence for each additional conviction under Section 924(c) in that indictment pursuant to subsections (c)(1)(C)(i) and (c)(1)(D)(ii)). *See also Abbott v. United*

---

[17] The "except" clause in Section 924(c)(1)(A)(ii) states:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> . . . .
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years[.]

*States*, 562 U.S. 8, 13 (2010) ("We hold . . . that a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction, and is not spared from that sentence by virtue of receiving a higher mandatory minimum on a different count of conviction."); *United States v. Barriera-Vera*, 354 Fed. App'x 404, 408 (11th Cir. 2009) (holding that the district court did not err by imposing the mandatory minimum sentence for each of the defendant's § 924(c) convictions and running those sentences consecutive to both each other and the sentences for the defendant's five bank robbery convictions). Ground fourteen warrants no relief.

**Ground Seventeen**

Rondon contends that the cumulative effect of trial counsel's errors resulted in a denial of his Fifth and Sixth Amendment rights. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (quoting *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted)). "Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985). *See also Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [petitioner] received a fair trial as is [his] due

under our Constitution."). Because each of Rondon's grounds of ineffective assistance of trial counsel lacks merit, no cumulative prejudicial effect results. *See Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of [counsel's] cumulative errors does not warrant habeas relief."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003). Ground seventeen warrants no relief.

Evidentiary hearing

Rondon moves (Doc. 18) for an evidentiary hearing. This case warrants no evidentiary hearing because "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003).

Accordingly, Rondon's motion to vacate (Doc. 1) is **DENIED**. Rondon's motion for leave to conduct discovery (Doc. 16), his motion for production of documents (Doc. 17), his motion for an evidentiary hearing (Doc. 18), and his motion to file a supplemental brief (Doc. 20) are each **DENIED**. The clerk must enter a judgment against Rondon and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

Rondon is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district

court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Rondon must show that reasonable jurists would find debatable the merits of the underlying claims. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Rondon is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 18, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE